J-S38016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.K.N., SR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| B.L.N., | |
| Appellee | No. 238 MDA 2015 |

Appeal from the Order entered January 8, 2015,
in the Court of Common Pleas of York County,
Civil Division, at No: 2014-FC-001480-03

BEFORE: WECHT, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.: **FILED AUGUST 13, 2015**

R.K.N., Sr. (Father), appeals from the order entered January 8, 2015, in the Court of Common Pleas of York County, which awarded primary physical custody of his minor daughter, A.R.P.N. (Child), born in February of 2008, to B.L.N. (Mother).[1] After careful review, we affirm.

Child was born during the marriage of Mother and Father. It is not clear when the parties separated, or if a divorce decree has been entered. On August 13, 2014, Father filed a complaint for custody of Child.[2] A custody trial was held on January 6, 2015, during which the trial court heard

---

[1] We note that Mother has not filed a brief in this matter.

[2] At the time Father filed his complaint, the parents were subject to a preexisting custody order, entered on April 7, 2014, which awarded Mother primary physical custody, awarded Father partial physical custody, and awarded both parents shared legal custody.

the testimony of York County Office of Children, Youth, and Families (CYF) caseworker, Kayla Smith; forensic nurse, Elana Davis; Child's school counselor, Erin Hanson; Mother's current boyfriend, R.F. (Boyfriend); Father; and Mother.[3] On January 8, 2015, the trial court entered its order awarding primary physical custody of Child to Mother. The order also awarded Father partial physical custody of Child every weekend from 4:30 p.m. on Friday until 4:30 p.m. on Sunday, and awarded both parents shared legal custody.[4] Father timely filed a notice of appeal on February 3, 2015, along with a concise statement of errors complained of on appeal.

Father now raises the following issues for our review.

I. Did the trial court commit an abuse of discretion in rendering a decision to grant Mother primary custody of the parties['] minor child, [Child] (YOB 2008) which decision was against the weight of the evidence presented at trial, and is contrary to the best interest of the child?

II. Did the trial court commit an abuse of discretion and err in determining that with respect to which party encourages and permits the child to have frequent and continuing contact with

---

[3] Father filed his custody complaint *pro se*, and both Mother and Father were *pro se* during the custody trial. The parents testified by providing a brief statement to the trial court, and then were cross-examined by the opposing parent, and by the court. Father is represented by counsel on this appeal.

[4] On October 19, 2014, Father filed a petition for contempt, in which he alleged, *inter alia*, that Mother failed to provide him with custody of Child during one of Child's days off from school. In its opinion accompanying the subject order, the trial court stated that it found Mother in contempt for withholding custody of Child on at least two occasions. Trial Court Opinion, 1/7/15, at 8. The court stated that it would not impose sanctions at that time, but that sanctions would be imposed if Mother committed any further acts of contempt. *Id.*

-2-

the other party, pursuant to 23 Pa. C.S.[A.] §[]5328(a)(1), that the factor only "slightly favors" Father?

III. Did the trial court abuse its discretion and err in determining that neither party or member of that party's household committed abuse and that there was no continued threat of harm to the child pursuant to 23 Pa. C.S.[A.] §[]5328(a)(2) and failed in giving [*sic*] weighted consideration to this factor as it impacts the safety of the child?

IV. Did the trial court abuse its discretion and err in determining that ability to provide stability and continuity in the child's education, family life and community life pursuant to 23 Pa. C.S.[A.] §[]5328(a)(4) favors "heavily" in favor of Mother merely because awarding majority custody to Father would mean a change in school district for the child?

V. Did the trial court abuse its discretion and err in failing to properly consider the well[-]reasoned preference of the child based on child's maturity and judgment, pursuant to 23 Pa. C.S.[A.] §[]5328(a)(7)?

VI. Did the trial court abuse its discretion and err in determining that the parties were equally likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, pursuant to 23 Pa. C.S.[A.] §[]5328(a)(9)?

VII. Did the trial court abuse its discretion and err in determining that the parties were equally likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child, pursuant to 23 Pa. C.S.[A.] §[]5328(a)[(]10)?

VIII. Did the trial court abuse its discretion and err in failing to properly consider Mother's mental condition pursuant to 23 Pa. C.S.[A.] §[]5328(a)(15), and failed in giving [*sic*] weighted consideration to this factor as it impacts the safety of the child?

Father's Brief at 10-11 (suggested answers omitted).[5]

_____

[5] In the "Conclusion" portion of his brief, Father asserts that the trial court "failed to weigh the entirety of the 23 Pa.C.S.[A.] §[ ]5328(a) factors in making the custody determination and did not articulate[] its consideration

We address Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

---

in a manner that informed the parties of the reasons for the custody award." Father's Brief at 30. We note that Father has waived this claim, as it was not included in his statement of questions involved, or in his concise statement of matters complained of on appeal. ***See Krebs v. United Refining Co. of Pa.***, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted). In addition, even if Father had properly preserved this claim, it would not entitle him to relief, as the trial court drafted an opinion in which it discussed each of the Section 5328(a) factors, and provided its rationale for awarding Mother with primary physical custody.

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Instantly, the trial court reviewed the factors listed **supra**, and concluded that the majority of them did not favor either parent. Trial Court Opinion, 1/7/15, at 1-7. The court did, however, conclude that Section 5328(a)(1), which pertains to which parent is more likely to encourage and permit contact with the other parent, "slightly favors Father," due to Mother's history of withholding custody. **Id.** at 4. The court also determined that Section 5328(a)(4), which pertains to Child's need for stability and continuity, "heavily favors Mother," because Child is doing well in her current school, and because granting Father primary physical custody would require Child to change school districts. **Id.** at 5. Finally, the court observed that a shared physical custody arrangement would be difficult, given that Mother and Father live 45 minutes to an hour away from one another. **Id.** at 6. Based on these considerations, the court reasoned that it

would be in Child's best interest for Mother to retain primary physical custody. *Id.* at 7.

Father's first issue on appeal is that the trial court abused its discretion by concluding that Section 5328(a)(1) favors him only slightly.[6] Father's Brief at 18. Father contends that Mother kept Child from him for a period of seven months, as well as two holidays, and that the court should have concluded that Section 5328(a)(1) favors him heavily. *Id.* at 18-19. We disagree.

During the custody trial, Father testified that Mother withheld custody of Child during the previous Fourth of July and Labor Day weekends. N.T., 1/6/15, at 36-37. With respect to the Fourth of July, Mother claimed that she mistakenly arrived at the exchange location at an incorrect time, and did not deprive Father of custody purposefully. *Id.* at 49. With respect to Labor Day, Mother stated, "there was never any contact made on your end, so I did not call you to ask you if you wanted to get your daughter." *Id.* Ultimately, as noted *supra*, the court found Mother in contempt for failing to provide Father with custody of Child during these holidays. Trial Court Opinion, 1/7/15, at 8.

With respect to Father's claim that Mother withheld custody of Child for seven months, Mother and Boyfriend alleged that Father did not attempt to

_____

[6] We note that Father's issue "I" raises claims which Father argues in greater detail later in his brief. Accordingly, we do not address issue "I" as a separate argument, but instead address the claims raised therein as they arise in Father's later issues.

exercise his custody rights to Child during this period, and that Father filed his petition for primary custody only after his income tax reimbursement was garnished to pay for back due child support. N.T., 1/6/15, at 27, 33. In response, Father claimed that he attempted to contact Mother during the relevant seven months, but that Mother sent a text message back saying that he would never see Child again. *Id.* at 33-35. Mother denied Father's assertions, stating that she had copies of her phone records, and that Father did not attempt to call her during this time. *Id.* at 35. The trial court was free to accept Mother's and Boyfriend's version of events, and to conclude that Mother did not withhold custody of Child for seven months. No relief is due.

Father's next issue is that the trial court abused its discretion by failing to conclude that Mother had committed abuse against Child pursuant to Section 5328(a)(2), and by failing to give this factor weighted consideration. Father's Brief at 20. Father emphasizes the testimony presented during the custody trial that Child reported to a forensic nurse and to her guidance counselor that she was unhappy in Mother's home, and she was afraid of Mother and Boyfriend. *Id.* at 21-22. Father contends that, based on this and other testimony, "it is evident that the child experienced some mental and borderline physical abuse while at Mother's residence and in her care." *Id.* at 23. Again, we disagree.

During the custody trial, Father presented the testimony of Ms. Elena Davis, who is a forensic nurse at the York Hospital Emergency Department.

N.T., 1/6/15, at 11-12. Ms. Davis stated that she met with Child on August 9, 2014, after Father brought her to the emergency room due to Child's inappropriate behaviors.[7] *Id.* at 7, 12. During that meeting, Child stated that she was afraid of Mother and Boyfriend. *Id.* at 7-8. Specifically, Child stated, "sometimes I'm afraid of my mom or [Boyfriend], that they are going to hurt me. I'm afraid of my mom. I don't know why. I don't know." *Id.* at 10. Child further reported that "my dad never spanks me, but he puts me in the corner," and that Boyfriend "is really strong and he grabs my arm and picks me up by my shoulders." *Id.* at 8. Child also indicated that Boyfriend "spanks me and puts me in the corner. He put me outside all by myself in the corner." *Id.* As a result of Child's statements, Ms. Davis made a referral to CYF, and recommended that Child should stay with Father until CYF suggests otherwise.[8] *Id.* at 10.

Ms. Erin Hanson testified that she is a guidance counselor at Child's elementary school. *Id.* at 16. Ms. Hanson stated that she met with Child "three or four" times, and that these meetings took place "once prior to

---

[7] Child's behaviors included pulling her hair out, chewing on her hair, eating her hair, and using her hair as floss. N.T., 1/6/15, at 12. Child reportedly also was playing with her own excrement and was "showing some violent behavior towards her brothers." *Id.* at 12-13.

[8] CYF caseworker, Kayla Smith, testified that she received a referral concerning Child in August of 2014, and that the case was closed in October of 2014. N.T., 1/6/15, at 4. Ms. Smith explained that Child was interviewed twice, and that while Child described "a few problems she was having with mom's boyfriend at the house," Child did not disclose anything that was "concerning of abuse." *Id.* at 4-5.

break, [and] once or twice in October, but I don't have the specific dates." *Id.* at 16, 18-19. Ms. Hanson stated that Child first was referred to her by Father, but that Child also has asked to meet with her independently.[9] *Id.* at 19-20. During Ms. Hanson's meetings with Child, Child reported that "she feels safer at her father's house, [and] does not feel comfortable at mom's house." *Id.* at 16. Child also stated that she would want to live with Father, and that she feels scared and unsafe at Mother's home. *Id.* at 17. In contrast, Child reported that she feels happy at Father's home. *Id.*

However, both Boyfriend and Mother testified that Child no longer engages in inappropriate behaviors. Boyfriend stated that Child has not engaged in inappropriate behaviors "in a couple months." *Id.* at 24, 28-29. Mother indicated that Child is in therapy due to anxiety, and that her issues "stopped once school started." *Id.* at 48, 51. During her *in camera* interview with the trial court, Child reported that she does not have concerns at either parent's home, and that she is happy at both places. *Id.* at 66-67. When asked whether she continues to engage in inappropriate behaviors, Child stated, "I try not to." *Id.* at 66. When asked why she started engaging in inappropriate behaviors, Child responded, "I think it's because I didn't really get enough attention at my mom's house." *Id.* Child stated

---

[9] Reportedly, Father referred Child to Ms. Hanson after Child informed Father that Mother was not feeding her breakfast in the morning. N.T., 1/6/15, at 19. Father called to ask if there was a way that Child could eat breakfast at school. *Id.* Child reported to Ms. Hanson that there were some days that she did not have time at Mother's house to eat breakfast. *Id.* at 20.

that she now was receiving sufficient attention while in the custody of Mother. *Id.*

Thus, the record reflects that Child has a history of engaging in inappropriate behaviors while in Mother's care. However, the evidence supports the trial court's conclusion that Child's behaviors have improved, and that Child is happy living with Mother. *See* Trial Court Opinion, 1/7/15, at 4. Moreover, it was reasonable for the court to conclude that Child has not been abused by Mother and Boyfriend, given Boyfriend's testimony that he does not harm Child, and given Ms. Smith's testimony that CYF investigated the matter and determined that abuse did not occur. Father is not entitled to relief.

Father's next argument is that the trial court abused its discretion and erred by concluding that Section 5328(a)(4), "heavily favors" Mother. Father's Brief at 23-24. Father asserts that this determination was "completely unjust," because there was no evidence presented during the custody trial that Child would be harmed by switching school districts, and because there was also no evidence presented which suggests that Child's academic success is a result of Mother's parenting. *Id.* at 24. Father further suggests that Child "may persevere" in a new school district, and that granting him primary custody "might not affect" Child's academic and social success. *Id.* We are unable to grant Father relief.

Based upon our review of the record, and cognizant of our standard of review, we cannot conclude that the trial court abused its discretion in

finding that consideration of Section 5328(a)(4) favors Mother, as Child is doing well in her current school district.

In his next argument, Father contends that the trial court did not "properly consider" Child's preference to spend more time with him. Father's Brief at 25. Father asserts that the court "failed to recognize that a seven-year-old child might not disclose abuse to an adult stranger in a black robe that the child has known for less than twenty minutes. The trial court did not consider that the child may not feel comfortable with him." *Id.*

Again, Father is not entitled to relief. During her *in camera* interview, Child stated that she does not like the current custody arrangement, and that "I want to see my dad a little bit more." *Id.* at 65. Child specified that she would like to be in Father's custody for "four days instead of three or two, whatever," and agreed that she would like custody to be "more shared[.]" *Id.* The trial court then asked Child whether she would like a "week on, week off" schedule, or "just like a couple more days a month," to which Child replied, "[j]ust like a couple more days a month and more days." *Id.* On appeal, Father does not challenge the trial court's conclusion that a shared custody arrangement would be contrary to Child's best interest, given the distance between the parents. Moreover, as discussed *supra*, Child stated that she was happy living with both parents and did not have any concerns. Father's argument that Child may have been uncomfortable during her *in camera* interview is speculative, and does not warrant reversal of the trial court's order on that basis.

Father argues next that the trial court abused its discretion and erred in determining that Mother and Father were equally likely to maintain a loving, stable, consistent and nurturing relationship with Child, adequate for Child's emotional needs. *Id.* at 25. Father contends that his testimony demonstrated that he is a patient and understanding father. *Id.* at 26. In contrast, Father states that the court heard little testimony which would suggest that Mother is a loving and capable parent. *Id.*

Again, we are unable to grant relief, as the record supports the trial court's conclusions. During the custody trial, Father testified that he has a chart which he uses to track Child's good and bad behaviors, and that he rewards Child's good behaviors and progressively punishes Child's bad behaviors. N.T., 1/6/15, at 31. He also testified that Child is open with him about her feelings and that he listens to her concerns. *Id.* at 32. However, as discussed *supra*, Mother and Boyfriend stated that Child's inappropriate behaviors have improved, and Child herself stated that she is happy and does not have any concerns with Mother's home. In addition, Ms. Hanson observed that Child has become "a model student," during her time residing with Mother, and that she is performing "very well academically." *Id.* at 18, 21. Given this testimony, it was reasonable for the court to conclude that both Mother and Father are suitable parents.

Father's next argument is that the trial court abused its discretion and erred when it concluded that both Mother and Father were equally likely to attend to the daily physical, emotional, developmental, educational, and

special needs of Child. Father's Brief at 27. Father emphasizes, *inter alia*, that he sought medical treatment for Child due to her inappropriate behaviors, and that he reached out to Child's guidance counselor due to concerns that Child was not eating breakfast before going to school. *Id.* at 27-28. Father also contends that Mother is exposing Child to adult subject matter by doing tricks on a "stripper pole" in front of Child, and that Mother was dishonest about these activities during the custody trial. *Id.* at 28.

We conclude that the trial court did not abuse its discretion. During the custody trial, Boyfriend admitted that there is a "stripper pole" in the basement of the home he shares with Mother. N.T., 1/6/15, at 24. However, Mother stated that Child has not seen her dance on the pole. *Id.* at 52. Prior to Father's testimony, Father provided the court with Child's journal. *Id.* at 29. Father stated that Child has read parts of the journal to him, and suggested that the court should ask Child to read portions of it as well. *Id.* The court asked Child several questions about the journal during her *in camera* interview. Child responded, in pertinent part, as follows.

Q. Okay. It says -- Okay. My mom -- Is that ["]says bad words?["]

A. Uh-huh.

Q. What type of bad words does she say?

A. She says all the bad words on there that I said.

Q. Okay. So I see the word sex, shit, ass. Is that -- Okay. Does that sound right?

A. Uh-huh. And they call me dumb as a rock.

Q. Oh, okay. They've called you that? Do they do that anymore?

A. They don't really do it a lot, but they still call me names.

Q. Okay. Let's see. Today I'm having McDonald's. That sounds good. Can you tell me what that says? My mom --

A. My mom dances on the pole. She goes back -- Well I run back and run forward and then I jump on it then I'm done. And my mom, like she -- she does like tricks on it.

Q. Okay. You've seen her do these things?

A. Uh-huh.

Q. Does she do it a lot or is it just a couple times?

A. It's just a couple times. They don't always have it -- the pole up.

Q. Okay. When is -- How long ago was it since it's been up?

A. The last time my mom -- I think it's one of the pages on here. It says that she was -- naked with [Boyfriend] and they were playing music and --

Q. Did you see this or is this something you heard?

A. It's -- That night I threw up and I went down to tell my mom. And I saw a light, and she told me not to come down, she'll clean it up. And then when she came up, she was in her -- it was like a swim suit and I heard music I think. And they were -- I think they were on the pole because the next morning I saw [Boyfriend's] pants laying on the floor there.

Q. Okay. Okay. You say some things about your mom. She's the worst mom ever. Do you still feel that way or is that just you felt that at the time?

A. I just felt that at the time.

Q. Okay. But you don't feel that way anymore?

A. Not that much.

Q. Here you say I love my family.

A. Uh-huh.

Q. They are the best family ever.

A. (Nods affirmatively.). I love my family, just not really [Boyfriend's side of the family] because of they always like act bad to me.

N.T., 1/6/15, 67-69.

We again conclude that no relief is due. While Child's apparent knowledge of Mother's "stripper pole" is concerning, and while Child reported that Mother uses bad words, and that Mother and Boyfriend call Child names, it was the trial court's duty to weigh this testimony against the other evidence presented in Mother's favor. In addition, we observe that there is no evidence which demonstrates that Child has been harmed by Mother's actions, or that Mother has purposefully been involving Child in these types of activities. To the contrary, Child's account of the incident involving Mother's "stripper pole" demonstrates that Mother attempted to prevent Child from entering the basement. The court's decision to maintain primary custody is supported by the record, and we are not permitted to disturb the court's conclusion.

Father's final argument is that the trial court erred and abused its discretion in that it "failed to adequately explore Mother's postpartum depression and neglected to solicit enough information to determine that she

is not a safety risk to the child." Father's Brief at 29. Father suggests that "it may well be" that Mother continues to suffer from mental health issues, and that Boyfriend also may suffer from undiagnosed mental health issues. *Id.* at 29-30.

Once again, we conclude that Father is not entitled to relief. Mother testified that that she suffered from postpartum depression in 2008, but that she has had no mental health issues since then. N.T., 1/6/15, at 58. As before, the trial court was free to credit this testimony, and Father's argument that Mother and Boyfriend may currently have mental health issues is speculative.

Accordingly, because we conclude that none of Father's arguments entitles him to relief, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2015